UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MONIQUE ADAMS *ex rel.* MICHAEL S. ADAMS, *deceased*, <br>     Plaintiff, <br><br>     vs. <br><br> CAROLYN W. COLVIN, *as Acting Commissioner of Social Security*, <br>     Defendant. | Case No. 1:13-cv-01939-JMS-TAB |

### ENTRY REVIEWING THE COMMISSIONER'S DECISION

Michael S. Adams applied for Social Security disability benefits from the Social Security Administration ("SSA") on August 17, 2010, alleging a disability onset date of December 15, 1999. [Filing No. 18-2 at 27.] His application was denied initially on December 20, 2010, and on reconsideration on March 29, 2011. [Filing No. 18-2 at 27.] A hearing was held on March 23, 2012, before Administrative Law Judge James R. Norris (the "ALJ"), who issued a decision on April 13, 2012, determining that Mr. Adams was not entitled to receive disability benefits. [Filing No. 18-2 at 27-35.] The Appeals Council denied review on June 4, 2013, [Filing No. 18-2 at 12], making the ALJ's decision the Commissioner's "final decision" subject to judicial review. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007) (citation omitted).

On December 9, 2013, Mr. Adams filed this civil action pursuant to 42 U.S.C. § 405(g), requesting that this Court review his denial of disability benefits. [Filing No. 1 at 1.] Mr. Adams died on February 28, 2014. [Filing No. 16 at 1.] The Court granted a motion to substitute Mr. Adams' daughter, Monique Adams, as the proper party to this action, since she may be entitled to any award of past-due benefits. [Filing No. 16; Filing No. 20.]

1

# I.
## BACKGROUND

Mr. Adams was fifty-five years old when he applied for disability benefits with the SSA, alleging a disability onset date of December 15, 1999. [Filing No. 18-5 at 2.] Prior to his alleged disability onset date, Mr. Adams was a medical equipment installer/repairer, installing computerized axial tomography scanners. [Filing No. 18-2 at 54-56.] It is undisputed that Mr. Adams' date last insured ("DLI") was December 31, 2002. [Filing No. 18-2 at 35; Filing No. 22 at 1; Filing No. 27 at 3.] Mr. Adams engaged in at least some work in construction and home remodeling after that date. [Filing No. 19-7 at 39 (medical note from July 2007); Filing No. 19-9 at 8 (medical note from September 2010).]

On March 23, 2012, the ALJ held a hearing that was limited to the issue of whether or not Mr. Adams was disabled prior to his DLI of December 31, 2002. [Filing No. 18-2 at 43.] Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4), the ALJ issued an opinion on April 13, 2012, determining that Mr. Adams was not entitled to receive disability benefits. [Filing No. 18-2 at 27-35.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. Adams last met the insured status requirements of the Social Security Act on December 31, 2002. [Filing No. 18-2 at 29.] The ALJ further found that Ms. Adams had not engaged in substantial gainful activity[1] after the alleged disability onset date. [Filing No. 18-2 at 29.]

---

[1] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

- At Step Two of the analysis, the ALJ found that Mr. Adams suffered from the following severe impairment: degenerative disk disease of the cervical spine. [Filing No. 18-2 at 30.]

- At Step Three of the analysis, the ALJ found that Mr. Adams did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 18-2 at 30.]

- After Step Three but before Step Four, the ALJ concluded that through the date of last insured, Mr. Adams had the residual functional capacity ("RFC") to perform light work,[2] except Mr. Adams was unable to climb scaffolds. [Filing No. 18-2 at 30.] Mr. Adams was also found to be limited by only occasionally being able to climb ramps or stairs, stoop, balance, crouch, crawl, or kneel. [Filing No. 18-2 at 30.] Lastly, Mr. Adams was found to be unable to reach above shoulder level with his left upper extremity or extend the cervical spine to look up on more than an occasional basis. [Filing No. 18-2 at 30.]

- At Step Four of the analysis, the ALJ found that Mr. Adams was unable to perform any past relevant work. [Filing No. 18-2 at 33.]

- At Step Five of the analysis, the ALJ found that considering Mr. Adams' age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that he could perform, such as cashier, office machine operator, or mail clerk. [Filing No. 18-2 at 34.]

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

- Based on these findings, the ALJ concluded that Mr. Adams was not disabled and thus not entitled to the requested disability benefits. [Filing No. 18-2 at 34-35.]

Mr. Adams sought review of the ALJ's decision from the Appeals Council, but that request was denied on June 4, 2013, [Filing No. 18-2 at 12], making the ALJ's decision the Commissioner's "final decision" subject to judicial review. [Filing No. 18-2 at 12.] Mr. Adams then filed a civil action with this Court, asking that the decision of the SSA be reserved and his case remanded. [Filing No. 1.]

## II.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable

4

deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the

appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## III.
### DISCUSSION

Mr. Adams' primary argument challenges the ALJ's adverse credibility finding. [Filing No. 22 at 7-10.] The Commissioner argues that the ALJ's decision should be affirmed. [Filing No. 27 at 7-10.] The parties dispute the applicable standard that this Court applies when reviewing an ALJ's adverse credibility determination based in part on objective evidence, and the Court will begin by addressing that issue.

### A. Applicable Standard for Reviewing Credibility Determination

Mr. Adams contends that "if the credibility finding is not based on an inarticulable or intangible factor, a court has greater freedom to review the finding." [Filing No. 22 at 8 (citing *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994)).] Thus, he argues that because the ALJ "did not allege that his credibility finding was based on an inarticulable or intangible factor . . . the patently-wrong standard does not apply." [Filing No. 22 at 8.]

The Commissioner disputes Mr. Adams' argument that the patently-wrong standard does not apply to this Court's review of the ALJ's adverse credibility determination. [Filing No. 27 at 6-7.] She contends that the case law Mr. Adams cites does not stand for that proposition and urges this Court to apply the well-established standard. [Filing No. 27 at 6.]

The Seventh Circuit has held that when a credibility determination rests "on objective factors or fundamental implausibilities rather than subjective considerations, appellate courts have greater freedom to review the ALJ's decision." *Herron*, 19 F.3d at 335; *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) ("Although an ALJ's credibility determination is usually entitled

6

to deference, 'when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision.'") (quoting *Herron*, 19 F.3d at 335). But Mr. Adams makes an unsupported leap to his conclusion that the ALJ's credibility determination is not entitled to any deference in this case. *Herron* goes on to hold that "[s]ince the ALJ is in the best position to observe witnesses," a credibility determination will be upheld if it is "not patently wrong." 19 F.3d at 335; *see also Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 788 (7th Cir. 2003) (summarizing *Herron* as "remanding determination when credibility finding was based on facts that did not exist").

The Court concludes that although Mr. Adams is correct that the Court has "greater freedom to review" the objective evidence the ALJ cited in support of his credibility determination, the ALJ's determination is still entitled to deference and will not be reversed if it is not patently wrong. *Herron*, 19 F.3d at 335. The Court will more fully set forth the applicable standard when addressing Mr. Adams' substantive challenge to the ALJ's adverse credibility finding.

### B. The ALJ's Adverse Credibility Determination

Mr. Adams argues that the ALJ's decision must be reversed because substantial evidence does not support the ALJ's adverse credibility finding. [Filing No. 22 at 7-10.] Specifically, Mr. Adams contends that it was error for the ALJ to rely on Mr. Adams' ability to perform some construction and remodeling work after his DLI because "the ALJ failed to ask Adams at [the] hearing about that supposed activity." [Filing No. 22 at 9.] "In other words, the ALJ improperly sandbagged Adams, directing his representative to focus his testimony on his condition prior to his [DLI] and yet finding relevant post-[DLI] evidence and not questioning [Adams] about [that

7

evidence]." [Filing No. 22 at 9.] Mr. Adams contends this was not harmless error because it affected Mr. Adams' credibility finding and, thus, his assigned RFC. [Filing No. 22 at 9-10.]

In response, the Commissioner argues that Mr. Adams has failed to show that the ALJ's adverse credibility determination was patently wrong. [Filing No. 27 at 7.] She points to various evidence cited by the ALJ, including that the record contained no treating source statements supporting objective functional limitations, that Mr. Adams had a history of frequently stopping his medications, that Mr. Adams frequently failed to appear for scheduled appointments, and that Mr. Adams engaged in work activity as late as 2010. [Filing No. 27 at 7-8.] With regard to Mr. Adams' argument that the ALJ "improperly sandbagged him" by not questioning him at the hearing about his post-DLI work activity, the Commissioner argues that the cases Mr. Adams cites are inapposite because the ALJ did not fail to question Mr. Adams "about an essential matter." [Filing No. 27 at 9.] Thus, the Commissioner urges the Court to affirm the ALJ's decision. [Filing No. 27 at 11.]

Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska*, 454 F.3d at 738. The absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), but when faced with evidence both supporting and detracting from a claimant's allegations, "the resolution of competing arguments based on the record is for the ALJ, not the court[,]" *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). In "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and a credibility determination "must contain specific reasons for

the finding on credibility, supported by the evidence in the case record." *Prochaska*, 454 F.3d 738.

After detailing the evidence in the record at length, the ALJ summarized his conclusion regarding Mr. Adams' credibility as follows:

> [Mr. Adams'] failure to follow prescribed treatment and to attend scheduled appointments significant undermines his credibility. The statements from the treating physicians concerning work activity after the date last insured imply that the claimant was engaging in rather strenuous work activity as late as 2010. Consequently, the claimant's allegations of severe limitations prior to December 31, 2002 are found not to be credible.

[Filing No. 18-2 at 33.] Mr. Adams does not challenge the ALJ's conclusions regarding his failure to follow prescribed treatment or his failure to attend scheduled appointments. Instead, Mr. Adams argues that the ALJ erred by allegedly limiting Mr. Adams' testimony at the hearing to pre-DLI evidence but then holding post-DLI activities against him without questioning him about them at the hearing. [Filing No. 22 at 9.]

The hearing before the ALJ was limited to the issue of whether or not Mr. Adams was disabled prior to his DLI of December 31, 2002. [Filing No. 18-2 at 43.] In response to his attorney's line of questioning about medical issues Mr. Adams was having prior to his DLI, Mr. Adams testified that he

> should have been studying the images myself, but when I look[ed] at one, I can only compare a bad one to a good one. But when I was referred to one of the neurosurgeons, he said he couldn't do anything except look at the X-ray.
>
> So we had an X-ray of my neck, and we put it up on the viewer. It was like – I couldn't believe it because on each one of my vertebrae, it has like a growth that looks like a bird's beak.

[Filing No. 18-2 at 54.] At that point, the ALJ interrupted and asked "[Counsel], where are we going with all of this? I'm lost. I think we've kind of gone afield on some of this. I thought we were talking about Mr. Adams' symptoms prior to the date last insured, and I think we've gone

9

beyond that." [Filing No. 18-2 at 54.] Counsel then asked Mr. Adams if he had "symptoms with your neck prior to 2002 as far as your functional limitations, not as far as what you've seen medically." [Filing No. 18-2 at 55.] Mr. Adams responded, "Yes. . . . Well, if I stared at the TV or something very long, then it would lock up, and I would have to move my shoulders and twist my neck to do it. If I was looking at a computer screen, it would do it. That's about it." [Filing No. 18-2 at 55.]

Mr. Adams mischaracterizes the ALJ's limitation on his testimony. When assigning a claimant an RFC—residual *functional* capacity—it is functional limitations related to a claimant's impairments, not just the diagnosis of an impairment that matters. *See* 20 C.F.R. § 404.1545 (noting that the RFC accounts for "physical and mental *limitations*" from the impairments) (emphasis added). Mr. Adams was testifying about his conclusions regarding the medical evidence when the ALJ interrupted him. But Mr. Adams is not a doctor, and the ALJ redirected his testimony to the functional limitations that Mr. Adams experienced during the relevant time period.

Mr. Adams does not challenge the ALJ's adverse credibility finding on any basis other than that the ALJ allegedly erred by not specifically questioning him about post-DLI work at the hearing. Mr. Adams has not directed the Court to any authority that the ALJ must specifically question a claimant about activities post-dating the DLI if the ALJ relies on that evidence in making an adverse credibility determination, and the cases he cites do not stand for that proposition. *See Williams v. Colvin*, 757 F.3d 610, 614-15 (7th Cir. 2014) (ALJ erred by making adverse credibility finding after claimant was present at hearing but did not testify because "[t]he need to hear what [the claimant] might say concerning her physical ailments was essential because the medical evidence was inconclusive"); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (ALJ erred by making adverse credibility finding regarding lack of medical care without "explor[ing]

10

the claimant's explanations as to the lack of medical care); *Craft v. Astrue*, 539 F.3d 668, 678-79 (7th Cir. 2008) (same). Mr. Adams was represented by counsel at the hearing, and the Court "generally upholds the reasoned judgment of the Commissioner on how much evidence to gather [at the hearing], even when a claimant lacks representation." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). Mr. Adams does not argue that he did not do the cited work or that it was improper for the ALJ to rely on his ability to engage in that work in making assessing his credibility. Under these circumstances, and given that the ALJ built an adequate logical bridge from the evidence in the record to her conclusion regarding Mr. Adams' credibility, [*see* Filing No. 18-2 at 32-33], the Court denies Mr. Adams' request to reverse the ALJ's decision.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "The Act does not contemplate degrees of disability or allow for an award based on partial disability." *Id.* (*citing Stephens*, 766 F.2d at 285). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet*, 364 F. App'x at 274. Taken together, the Court can find no legal basis presented by Mr. Adams to reverse the ALJ's decision that he was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment shall issue accordingly.

March 19, 2015

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

11

**Electronic Distribution via CM/ECF:**

J. Frank Hanley, II
jfrankhanley@jfrankhanley.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov